(19 Misc. Rep. 14.)

## GROFF v. BLISS.

(Supreme Court, Appellate Term, First Department.　December 28, 1896.)

1. SET-OFF—ACTION BY ASSIGNEE FOR CREDITORS—PROMISSORY NOTE.
    The rule that defendant is not entitled to set off, as against an assignee, notes of the assignor falling due after delivery of the assignment does not prevent defendant, who is sued by an assignee for benefit of creditors on an account for goods sold and delivered, from setting off a note given by defendant to the assignor before assignment, due after assignment, and paid at maturity.

2. CONTRACTS—CONSIDERATION—ACCOMMODATION INDORSER—INDEMNITY.
    The obligation assumed by an accommodation indorser of notes, who procured their discount for the accommodated person, is a good consideration for the contract of the latter to credit them on an account for goods bought by the indorser of the accommodated person, by way of indemnity or security.

3. SAME.
    On failure of the accommodated person to pay said notes at maturity, and the payment of the same by the indorser, the latter is entitled to have the amounts credited on his account for goods bought.

4. SET-OFF—ACTION BY ASSIGNEE FOR CREDITORS.
    In an action by the assignee of such accommodated person for the benefit of creditors, on the account for goods sold, the indorser is entitled to set off the amount thus paid to take up the notes, it appearing that the proceeds arising from the discount of the notes were paid over to the assignor before assignment.

Appeal from city court of New York, general term.

Action by Frederick G. Groff, assignee of Benedict & Fowler, against Clara E. Bliss. From a judgment of the city court (41 N. Y. Supp. 1117) affirming a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Olin, Rives & Montgomery (G. A. Morrison, Jr., of counsel), for appellant.

A. R. Bunnell (L. B. Bunnell, of counsel), for respondent.

McADAM, J.　The action was by the plaintiff, as general assignee of Benedict & Fowler, to recover $686.38.　He claimed that Benedict & Fowler had between May 4, 1893, and November 13, 1894, sold building materials to the defendant of the value of $4,292.05, and that they received on account notes on which the defendant was entitled to a credit of $3,606.57, the difference between these amounts being the balance sued for.　On December 12, 1894, Benedict & Fowler made the assignment for the benefit of creditors under which the plaintiff acquired title.　The defendant set up in her answer that the balance claimed was incorrect, the true amount being $481.10, and that this had been paid.　She also pleaded as a counterclaim or set-off that, in addition to the notes credited in the schedule annexed to the complaint, certain other notes were delivered by her for the benefit and use of said firm, aggregating at least $1,500; that they were indorsed by the firm, and were discounted through the agency of the defendant by various persons, and upon maturity were not paid by said firm, in breach of the agreement

with the defendant; and that she, having become responsible for
the amount of the notes, paid them. It was conceded at the trial
that the items of the plaintiff's account were correct, except one,
of $201.19. That was a check given by the firm to take up a pro-
tested check of the defendant, and was on that account allowed to
the plaintiff by the jury. The allowance of this item established
that the debit side of the account kept by the plaintiff's assignors
was correct, and that the balance was $686.38. From this sum, with
$60.40 interest, making $746.78, the jury allowed the defendant $350,
paid November 16, 1894, leaving, according to the evidence submit-
ted to them, $396.78 due, for which they gave the plaintiff a verdict.

The questions of law presented for review are raised by exceptions
to rulings excluding certain portions of the alleged counterclaim,
or set-off. It appears that the trial judge literally enforced the rule
that a defendant is not entitled to set off, as against an assignee,
notes of his assignors falling due after the delivery of the assignment
(Martin v. Kunzmuller, 37 N. Y. 396; Fera v. Wickham, 135 N. Y.
223, 31 N. E. 1028), holding that it applied to this case. In stat-
ing the rule, the court in Fera v. Wickham, supra, said:

"The right of set-off must attach at the time of the making of the assign-
ment. It cannot arise afterwards, for the reason that the claim in favor of
the estate has passed to the assignee, and to allow a set-off would be to the
prejudice of the other creditors. I think the principle to which we should
adhere is this: When a party asks to have set off against a demand upon
him, held by an assignee for the benefit of creditors, a claim against the
insolvent estate, it will be allowed, provided his was a claim upon the estate
due when the assignment was made, upon the ground that, by reason of the
existence of cross-demands at the time of the assignment, which were due
(or might have become due, at the creditor's election), an equitable adjust-
ment by set-off is made without interfering with the equities of others. But,
after the estate has passed to an assignee upon a trust to hold for and to dis-
tribute among creditors, the former and natural equity disappears in superior
equities vesting in the general body of creditors. They are then interested in
having equality of distribution, and if a creditor who, when the assignment
was made, had no right to any offset, may be allowed it afterwards, he gains
a preference."

The defendant claims that the facts pleaded and sought to be
established by her in no manner offended the rule stated, for the
reason that the set-off against the assignors existed in an equitable,
if not legal, form at the time of the assignment, and that the plain-
tiff, as assignee, merely succeeded to their rights; subject to the
then-existing defense. Code, § 1909; Griffin v. Marquardt, 17 N. Y.
28; Smith v. Felton, 43 N. Y. 419; Schieffelin, v. Hawkins, 1 Daly,
289; Story, Eq. Jur. § 1228; Maas v. Goodman, 2 Hilt. 275. It
is statutory law that a defendant may set forth in his answer as
many defenses or counterclaims, or both, as he has, whether they
are such as were formerly denominated "legal" or "equitable" (Code,
§ 507); and the city court possesses the same power in regard to
equitable defenses as the supreme court (Mack v. Kitsell, 20 Abb.
N. C. 293; Spofford v. Rowan, 3 N. Y. St. Rep. 272; affirmed 124
N. Y. 108, 26 N. E. 350), but not as to a counterclaim for purely
equitable affirmative relief (Richards v. Littell, 16 Misc. Rep. 339,
38 N. Y. Supp. 73).

The defendant offered in evidence, as the basis of her counter-claim, five notes, which, for convenience of reference, are designated "A," "B," "C," "D," and "E." A, which was for $350, having been admitted in evidence, and allowed by the jury, need not be further considered. B was for $200, made by the defendant, to the order of Benedict & Fowler, dated November 20, 1894, and due February 25, 1895. It is not credited on the assignor's account. This note should be accounted for in some manner by the plaintiff. It was given to the assignors on account November 20, 1894, and was a payment pro tanto at that time, because honored at maturity. The assignors could not have sued for this portion of the account before the maturity of the note without surrendering it on the trial, to avoid the possibility of a double payment of the same amount (Burdick v. Green, 15 Johns. 247; Hughes v. Wheeler, 8 Cow. 77; Johnson v. Jones, 4 Barb. 369; Armstrong v. Cushney, 43 Barb. 340; and kindred cases); and there is no reason why this protection should not be extended now. C was for $350, made by Benedict & Fowler, to the order of C. E. Bliss, dated November 10, 1894, and due February 13, 1895. D was for $500, made by W. B. Williams, to the order of Benedict & Fowler, dated October 29, 1894, and due January 29, 1895. E was for $450, made by W. B. Williams, to the order of Benedict & Fowler, dated October 26, 1894, and due January 26, 1895.

The defendant claimed and attempted to prove that C, D, and E were indorsed by her for the accommodation of Benedict & Fowler, for whose benefit and at whose request she had them discounted, paying over to them, before the assignment, the proceeds, upon the understanding that they were to be credited as payments on her account by way of indemnity or security. The obligation assumed by the defendant when she indorsed the notes and procured their discount formed a good consideration for the contract. Story, Cont. § 431; Gibson v. Lenane, 94 N. Y., at page 188. Of course, the credits given might be canceled if the assignors paid the notes at maturity, for they would in that event have fully answered the defendant's purpose as security. But the assignors did not pay, and the defendant, in consequence of her indorsement, was, as she anticipated, obliged to pay the notes, and became entitled to insist upon the fulfillment of the alleged agreement. The defendant had a right to go to the jury on these questions.

In Groff v. Friedline, 17 Misc. Rep. 352, 39 N. Y. Supp. 1064, a similar defense was presented and sustained. In affirming the city court, we said:

"The defendant * * * insists that she indorsed the note, and obtained the money thereon from August Kohn, and that, at the time she paid the money over to Benedict, it was agreed that the amount so paid should then be credited by his firm on the account against her. * * * The claim seems odd, yet it may be true. The case was submitted to the jury, which found the defendant's theory to be correct, that the plaintiff's assignors had been paid in full prior to the assignment, and therefore the assignee had no cause of action. While the version of the transaction given by the plaintiff's witnesses conforms to businesslike methods, and that given by the defendant is

out of the usual course, the jury, nevertheless, had the right to believe the de fendant and her witnesses."

Parties have the right to enter into any legal contract they choose and if founded on a good consideration, such as the one in question, it must be respected, notwithstanding its apparent oddity. Agreements seemingly more strange have been enforced. Hamer v. Sidway, 124 N. Y. 538, 27 N. E. 256. Indeed, contracts, however peculiar in character, may create legal rights, and give rise to equities which would not exist without them. If the defendant's contention be true, justice and equity demand that the debts be set off against each other, rather than that the defendant be obliged to pay twice, and left to rely upon the estate of insolvent debtors for repayment (Smith v. Felton, supra); for there is a natural equity that cross-demands should be offset, and that the balance only should be recovered (Lindsay v. Jackson, 2 Paige, 581). The plaintiff must go to the jury on the controverted facts, with whatever argument he may advance on the peculiarities of the transaction alleged by the defendant, and its improbabilities. He cannot have the defense brushed aside on mere technicalities, and prevent investigation by the sole arbiters of questions of credibility arising on disputed facts. Bagley v. Rowe, 105 N. Y. 171, 11 N. E. 386. If the case had gone to the jury in respect to notes B, C, D, and E, the plaintiff might have satisfied them that there was no truth in the defense relied upon, or that the proceeds of the discounts were credited in some manner not apparent on a mere inspection of the account, and that the account was, after all, substantially correct. But the case was not allowed to take this course, for, by excluding the four notes mentioned, all evidence concerning them was practically withdrawn from the consideration of the jury, and the main portion of the defense rejected. This was error, for which the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.